IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 95-60693

Summary Calendar

———————————————

HERMAN E. WALKER, JR., M.D.,

Petitioner,

versus

DRUG ENFORCEMENT ADMINISTRATION,

Respondent.

———————————————

On Petition for Review of a Final Order
of the Drug Enforcement Administration

———————————————

June 13, 1996

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Herman Walker, Jr. petitions for review of a final order of the Drug Enforcement Agency revoking his Certificate of Registration. Finding no error in the DEA's order, we affirm.

I.

Dr. Walker graduated from Louisiana State University School of Medicine in 1964 and began practicing medicine in Houma, Louisiana in 1966. In 1986, the Louisiana State Police began investigating Dr. Walker for prescribing excessive amounts of drugs to his

———————————————

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

patients. As a result of this investigation, the Louisiana State Board of Medical Examiners suspended Dr. Walker's license to practice medicine for five years and ordered him to surrender his Schedule II controlled substance privileges permanently. The Louisiana Court of Appeals stayed the Board's decision suspending Dr. Walker's medical license but affirmed its decision to revoke his Schedule II prescription privileges.

On September 16, 1993, the Deputy Administrator issued an order to show cause to Dr. Walker, notifying him of DEA's intent to revoke his certificate of registration pursuant to 21 U.S.C § 824. Dr. Walker requested a hearing. The ALJ docketed the case and issued a Prehearing Ruling, which described the sole issue as "[w]hether the record as a whole establishes that [Dr. Walker's] continued registration with the Drug Enforcement Administration would be inconsistent with the public interest as determining pursuant to 21 U.S.C. §§ 823(f) and 824(a)(4) (1988)."

At the hearing, Sergeant Richard Honora of the Louisiana State Police testified regarding the 1986 investigation of Dr. Walker. Sgt. Honora recounted how, after receiving an anonymous complaint regarding Dr. Walker, he directed an undercover agent, Cade Blades, to go to Dr. Walker's office and attempt to receive a prescription for weight-reduction drugs. Although Blades was "quite slim and weighed only 160 pounds, Dr. Walker prescribed Ritalin, a Schedule II controlled substance, to Blades.

Sgt. Honora further testified that he conducted a survey of local pharmacies regarding Dr. Walker's prescriptions. One

2

pharmacist, Dana Martin, informed Sgt. Honora that he had refused to fill some of Dr. Walker's prescription because he felt that Dr. Walker had prescribed drugs in dangerous combinations.

Donna Dombourian, a DEA investigator, testified that she received a complaint in 1991 from Janelle Wisinger regarding Dr. Walker. According to Dombourian, Mrs. Wisinger said that her husband murdered their next door neighbor while he was a patient of Dr. Walker. Mrs. Wisinger, who heard that Dr. Walker's license had been suspended, inquired why Dr. Walker was continuing to practice medicine. After learning that the state medical board had suspended Dr. Walker's Schedule II prescription privileges, Dombourian wrote Dr. Walker to request that he surrender his Schedule II privileges. When he refused, Dombourian decided to initiate formal proceedings to revoke his Certificate of Registration.

Dombourian further testified that the Terrebonne Parish Sheriff's office informed her that they had received a complaint regarding Dr. Walker from Crystal McGheehe, whose husband was a patient of Dr. Walker. Mrs. McGheehe had brought her husband's prescription bottles to the sheriff's office. The prescription dates on the bottles were close in time to one another. Based on this information, Dombourian decided to subpoena prescription records from five pharmacies in Houma regarding Dr. Walker's prescriptions for Raymond McGheehe.[1]

---

[1] Dombourian subsequently interviewed Mrs. McGheehe. Mrs. McGheehe told her that Dr. Walker had prescribed Valium, a Schedule IV controlled substance, to her husband. On one occasion, Dr.

Dombourian further testified that, after the subpoenas were served, a DEA investigator informed her that an anonymous woman had called to complain that Dr. Walker had prescribed controlled substances, including Vicodin, a Schedule III controlled substance, to women in the Houma area. These women had allegedly become addicts. Dombourian herself received an anonymous complaint from a physician at a local hospital who called to check that a woman had called to complain. He informed Dombourian that he had referred the woman to the DEA because the woman had said that she had put a family member "into detox" due to Dr. Walker's excessive prescribing.

Dombourian further testified that, after reviewing the pharmacy records obtained from the subpoenas, she decided to broaden the scope of her investigation and subpoena pharmacy records regarding Dr. Walker's prescription of Vicodin. Based on the information obtained from this second round of subpoenas, Dombourian was able to create patient profiles. Dombourian also subpoenaed the pharmacy next to Dr. Walker's office, seeking all the pharmacy's records regarding Dr. Walker's prescription of controlled substances.

Ronald Hingle, a pharmacist who regularly performed consulting work for the state Board of Medical Examiners, testified that he

---

Walker had given Mr. McGheehe two shots of pain medication even though a hospital had earlier refused to give him any controlled substances. According to Mrs. McGheehe, her husband was a drug addict who used Dr. Walker's prescriptions to support his drug habit. Although Mrs. McGheehe informed Dr. Walker's nurse of this fact, Dr. Walker continued to prescribe Valium and Lorcet, a Schedule III controlled substance, for him.

reviewed the patient profiles compiled by Dombourian. Several of the profiles disclosed that Dr. Walker had violated sound pharmacology by prescribing multiple central nervous system depressants for concurrent use by his patients. In addition, Dr. Walker had prescribed excessive amounts of opioids for prolonged periods of time. On cross-examination, Hingle conceded that he had not seen these patients' medical records to know whether the prescriptions were medically warranted.

In addition, Hingle testified that in 1984 the state medical board issued a policy statement regarding the use of anorectics. The statement described several uses of anorectics that would be considered conclusive evidence of prescribing anorectics illegitimately. Among the proscribed uses was the prescription of anorectics for a period in excess of 12 weeks or in the absence of demonstrated, consistent weight loss while on the medication. Significantly, the original complaint filed by the state medical board had charged Dr. Walker with prescribing anorectics for more than 12 consecutive weeks at a time.

In response, Dr. Walker testified that he treated a number of individuals for chronic pain. Among those patients were several of the individuals whose prescription profiles had been the basis for Mr. Hingle's testimony. He further explained that several patients vomited their pills. According to Dr. Walker, these circumstances required him to prescribe additional amounts of pain medications to his patients. Dr. Walker testified that he had never knowingly prescribed medication for recreational use.

Based on this evidence, the ALJ concluded that Dr. Walker's continued registration with the DEA "would not be in the public interest." She accordingly ordered the revocation of Dr. Walker's registration. Dr. Walker appealed to the Deputy Administrator of the DEA, who affirmed the ALJ's order. Dr. Walker now petitions this court for review of the Deputy Administrator's decision.

## II.

Walker first challenges the admission of much of the DEA's evidence, claiming that many of the statements made by the three DEA witnesses were inadmissible hearsay. That the statements identified by Dr. Walker were hearsay is beyond cavil; however, the Supreme Court held in Richardson v. Perales, 402 U.S. 389, 400 (1971), that the strict rules of evidence applicable in the courtroom do not operate in hearings conducted by administrative agencies. The testimony identified by Dr. Walker was admissible so long as it was not irrelevant, immaterial, or unduly repetitious. 5 U.S.C. § 556(d); 21 C.F.R. § 1316.59(a); Klinestiver v. DEA, 606 F.2d 1128, 1129 (D.C. Cir. 1979).

Dr. Walker next argues that the ALJ erred by admitting the prescription records subpoenaed by the DEA because the subpoenas themselves were not admitted into evidence. Dr. Walker did not object, however, to the admission of the records on this ground. Hence, this argument has been waived. Dr. Walker's contention that the patient profiles are inadmissible because they were compiled from the prescription records fails for the same reason.

6

Dr. Walker next argues that the record lacks substantial evidence to support the DEA's decision to revoke his registration. We disagree. Although most of the evidence against Dr. Walker was hearsay, the Supreme Court has held that hearsay can constitute substantial evidence. Richardson, 402 U.S. at 1428. Indeed, the Court of Appeals for the District of Columbia upheld the revocation of one doctor's DEA registration, even though much of the evidence against the doctor there was hearsay. Klinestiver, 606 F.2d at 1130. We are persuaded that the record contains sufficient evidence of Dr. Walker's breach of sound medical and pharmacological practices to warrant revocation of his registration.

Finally, Dr. Walker contests the DEA's choice of sanction, claiming that the DEA should not have revoked his registration. The choice of sanction is reviewed only for an abuse of discretion. Esservy v. Dep't of Transp., 857 F.2d 1286, 1290 (9th Cir. 1988); Sokoloff v. Saxbe, 501 F.2d 571, 576 (2d Cir. 1974). Based on the evidence in the record, we cannot say that the DEA abused its discretion in choosing to revoke his registration instead of some more limited sanction.

AFFIRMED.